# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLYOD VOISIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1302** |
| **TETRA TECHNOLOGIES, INC.** | **SECTION "C"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (R. Doc. 77)** filed by the Defendants in Interpleader, Louis R. Koerner, Jr. ("Koerner") and MidSouth Bank, N.A. ("MidSouth"), which was referred to the undersigned United States Magistrate Judge for determination pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (c).** Defendants in Interpleader, Duval, Funderburk, Sundbery, Lovell & Watkins ("Duval"), oppose the motion. (R. Doc. 78.) After obtaining leave of the Court, Koerner and MidSouth filed a Reply Memorandum in Support of Motion for Summary Judgment (R. Doc. 83). Upon review of the motion, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I. Factual Background

The plaintiff, Lloyd Voisin[1] ("Voisin"), instituted this Complaint against his employer, Tetra Technologies, Inc. ("Tetra") for injuries that he incurred while in the course of his employment with Tetra as a seaman. (R. Doc. 1, ¶ 5.) On March 26, 2009, a settlement was reached between Voisin, Tetra, and intervenor Joseph J. Weigand, Jr., who intervened in this matter asserting that he was entitled to 1/3 of his contingency fee because he was retained by Voisin in connection with this case

---

[1]The plaintiff's name in the original complaint is Lloyd Voisin. In subsequent filings he is addressed as Lloyd J. Voisin, Jr. or Lloyd Joseph Voisin, Jr.

(*See* R. Doc. 11, Weigand's Intervenor Complaint). (R. Doc. 26.) On March 27, 2009, the presiding Judge issued an Order dismissing the case. (R. Doc. 27.)

The Court approved the settlement reached in this matter on May 18, 2009. (R. Doc. 32.) The settlement stated that Tetra, or its insurer, would pay a total of $50,000, divided as follows: Tetra would deposit $45,700 into the Registry of the Court, pay $3,500 to attorney Joseph Weigand, and pay $800 to attorney Nicholas LaRocca. (R. Doc. 32, p. 2.) Tetra then filed a Complaint for Interpleader and for Declaratory Relief (R. Doc. 46) against Interpleader Defendants—Voisin; Koerner; The State of Louisiana, Ex Rel Louisiana Department of Social Services, Child Support Enforcement ("CSE"); MidSouth; Chateau Creole Apartments; Patty Neff Voisin; 32nd Judicial District Court IV-D Program; State of Louisiana, Lases #115900801; Duval, Funderburk, Sundbery, Lovell & Watkins ("Duval"); Tim Fanguy Bail Bonds, Inc.; Ricky Anthony Lebouef, Sr.; Patricia Hebert; State of Louisiana, Hearing Officer Recommendation Cases #001159008-01; and Howard Lucas Marcello. (R. Doc. 46, pp. 1-4.)

Tetra later filed an Amended and Supplemental Complaint for Interpleader and for Declaratory Relief (R. Doc. 48) adding Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Terrebonne General MC; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy as Interpleader Defendants. (R. Doc. 48, pp. 1-2.) Interpleader Defendants, Duval (R. Doc. 51); Koerner (R. Doc. 53); Patty Neff Hebert a/k/a Patricia Hebert a/k/a Patty Neff Voisin (R. Doc. 58); MidSouth (R. Doc. 76); and CSE (R. Doc. 63) answered Tetra's Interpleader Complaint. The clerk entered a default judgment against all Interpleader Defendants who failed to timely respond to Tetra's Interpleader Complaint, including MidSouth. (R. Doc. 61.) However, MidSouth informed the Court that it was not properly served with Tetra's Interpleader

Complaint (*see* R. Doc. 62), and therefore, MidSouth was permitted to file an Amended Answer (R. Doc. 76) to Tetra's Interpleader Complaint.

Koerner and MidSouth then filed the instant Motion for Summary Judgment (R. Doc. 77) seeking an award of the entire $45,700 placed in the Registry of the Court by Tetra, dismissal of the claims of Interpleader Defendants who filed responsive pleadings, and dismissing the merits of the claims of Interpleader Defendants against whom a clerk's entry of default has been entered. (R. Doc. 77, p. 1.)

Koerner claims that he represented Voisin in the pursuit of his claims against Tetra and secured the settlement funds deposited into the registry. (R. Doc. 77, p. 2.) MidSouth claims that it advanced funds utilized to support Voisin's case and to pay the expenses of Voisin. (R. Doc. 77, p. 2.) Koerner claims that on November 20, 2007, he entered into an employment contract with Voisin in which he would receive 40% of all money recovered by Voisin arising out of this case. (R. Doc. 77, p. 2.) The contract provided that any costs, advances, and expenses incurred by Koerner in pursuit of Voisin's claim would be taken from Voisin's portion of the settlement. (R. Doc. 77-3.) Koerner later secured loans on behalf of Voisin with MidSouth to provide necessary funding for the prosecution of his case. (R. Doc. 77, pp. 2-3.) Koerner contends that the total fees and costs associated with the pursuit and settlement of Voisin's claim were $28,198.01. (*See* R. Doc. 77-2, p. 4.) Koerner argues that his attorney's fees in this matter were $20,000 (40% of the $50,000 settlement), and that therefore, the total fees and costs due to him in this matter is $48,198.01. (R. Doc. 77-2, p. 5.) Out of the $50,000 settlement $4,300 was already paid by agreement to two other attorneys who advanced funds to Voisin under the mistaken belief that he was not represented by counsel. (R. Doc. 77-2, p. 5.) Therefore, Koerner contends that he is

3

entitled to the entire $45,700 in the Court's registry because he has acquired fees and costs in this matter in excess of that amount. (R. Doc. 77-2, p. 5.) Duval filed a response, opposing the motion. (R. Doc. 78.)

## II.     **Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

## III. Analysis

In Koerner and MidSouth's Motion for Summary Judgment (R. Doc. 77) they seek: (A) an award of the entire $45,700 placed in the Registry of the Court by Tetra, (B) dismissal of the claims of Interpleader Defendants who filed responsive pleadings, and (C) dismissal of the merits of the claims of Interpleader Defendants against whom a clerk's entry of default has been entered. (R. Doc. 77, p. 1.)

### A. First Lien and Privilege to Settlement Funds

Koerner and MidSouth argue that they are entitled to first lien and privilege to the entirety of the $45,700 deposited in the registry of this Court. (R. Doc. 77-2, p. 6.) Koerner and MidSouth further contend that, combined, Koerner's attorney's fees, loans from MidSouth (which Koerner negotiated and guaranteed), court costs, other fees and expenses, and Koerner's additional expenditures far exceed both the $50,000 settlement and the $45,700 in the Court's registry, and that therefore, no other claimant is entitled to any of the settlement funds. (R. Doc. 77-2, pp. 6-7.) Koerner additionally argues that the claims of the other Interpleader Defendants are lesser in rank than the claims of Koerner and MidSouth. (R. Doc. 77-2, p. 7.)

Koerner claims that under Louisiana Revised Statutes § 37:218 and § 9:5001, an attorney may, by contract with his client, acquire a special privilege first in rank superior to all other privileges to protect his fee and any amounts advanced by the attorney on behalf of his client. (R. Doc. 77-2, pp. 7-8.)[2] Koerner further argues that he was not required to file the contract in the suit record or in the mortgage/conveyance office of any parish in order to have priority over competing claims. (R. Doc. 77-2, pp. 8-9 (citing *Calk v. Highland Constr. & Mfg.*, 376 So. 2d 495, 499 (La. 1979); *Neely v. Hollywood Marine, Inc.*, 530 So. 2d 1116, 1120 (La. 1988)).

Koerner further argues that § 37:218 and § 9:5001 were later amended to extend their protections to advances made by an attorney on behalf of his client. (R. Doc. 77-2, pp. 9-10 (citing *Ragas v. Ragas*, 690 So. 2d 1112, 1114-15 (La. App. 4th Cir. 1997); *Theodile v. RPM Pizza, Inc.*, 865 So.2d 980, 984-85 (La. App. 3d Cir. 2004)). Koerner further argues that claims by an attorney for his fees and expenses are favored over claims of a "mortgage holder on the property as to which suit was filed and for which recovery was had." (R. Doc. 77-2, pp. 10-11.) Finally, Koerner contends that claims of ex-wives for child support are secondary to the claims of an attorney for his fees and expenses. (R. Doc. 77-2, p. 11 (citing *Dupuis v. Faulk*, 609 So. 2d 1190, 1193 (La. App. 3d Cir. 1992); *Ragas*, 690 So. 2d at 1114.)

### 1.    Priority Over Child Support Judgments

---

[2]The Court notes that technically, § 9:5001 applies only to property and proceeds obtained pursuant to a judgment and not a settlement, *Calk v. Highland Contr. & Mfg.*, 376 So. 2d 495, 499 (La. 1979), and that in this case, Koerner obtained a settlement, as opposed to a judgment, on behalf of Voisin. However, as stated in *Calk* and subsequent cases, "the legislative intent in passing R.S. 37:218 was to afford the contingency fee attorney comparable rights relative to settlements which he has relative to judgments and their proceeds" under § 9:5001. *Scott v. Kemper Ins. Co.*, 377 So. 2d 66, 70 (La. 1979). Therefore, cases dealing with priority of attorney's fees and costs under § 9:5001 may be persuasive authority for cases under § 37:218.

Koerner and MidSouth claim that under *Dupuis*, they are entitled to priority over the Interpleader Defendants seeking child support payments owed by Voisin; Patty Neff Hebert ("Hebert") and the State of Louisiana through the Department of Social Services, Child Support Enforcement, the 32nd Judicial District Court IV-D Program, and the State of Louisiana, LASES #115900801 (collectively, "the State of Louisiana"). (*See* State of Louisiana's Answer to Tetra's Interpleader Complaint, R. Doc. 63, p. 1.) Koerner and MidSouth claim that an attorney's privilege under La. Rev. Stat. §§ 9:5001 and 37:218 entitle them to priority over Hebert and the State of Louisiana.

In *Dupuis*, the Louisiana Court of Appeals affirmed a Trial Court's determination that an attorney who represented a client in obtaining a settlement had priority over the client's ex-wife, who had obtained judgments against the client for failure to make child support payments. 609 So. 2d 1190. In affirming the Trial Court's decision, the Court of Appeals held that medical and living expenses advanced by the law firm to the client were privileged expenses under § 37:218. *Id.* at 1193. The Court further found that § 37:218 entitled the attorney to priority to the settlement funds for his fees, costs, and advances over the ex-wife's child support judgments against the client. *See id.* at 1193-94; *see also Ragas*, 690 So. 2d at 1114-15 (holding that attorney has priority over an ex-wife, who obtained judgments against the client for delinquent child support payments, to judgement awarded to his client).

    **a.**    <u>**Fees**</u>

The Court finds that under § 37:218, Koerner can properly assert privilege to fees, costs, and advances that are properly within the confines of § 37:218 and Rule 1.8(e) of the Rules of Professional Conduct of the Louisiana State Bar Association ("Rule 1.8(e)"), which outlines the

types of expenses and costs that an attorney may advance on behalf of his client. Therefore, the Court recommends that Koerner's Motion for Summary Judgment be granted insofar as he requests priority over Hebert and the State of Louisiana for his attorney's fees ($20,000), earned in connection with the settlement.

### b. Costs and Advances

However, the Court finds that there is a remaining factual issue, as to Koerner's costs, that precludes granting Koerner and MidSouth's Motion for Summary Judgment. Courts have acknowledged that an attorney's guarantee of a litigation expense is equivalent to an attorney's advance of funds to his client because "[i]n both instances, the attorney is standing in the shoes of his client and therefore, is entitled to assert the attorney privilege created by LSA-R.S. 9:5001." *Ragas*, 690 So. 2d at 1115.

Here, however, although Koerner claims that he obtained loans from MidSouth on behalf of Voisin and guaranteed those loans (R. Doc. 77, p. 2.), the loan documents submitted by Koerner contain no reference to Koerner or his law firm and are only signed by Voisin and a MidSouth representative. (*See* Consumer Loan Agreements, R. Doc. 77-4.) The only indication that Koerner did guarantee Voisin's loans is Koerner's claim that on February 25, 2010, Koerner paid MidSouth $4,986.02 in interest on Voisin's loans. (R. Doc. 77-5, p. 3.) The Court finds that Koerner's claim that he guaranteed Voisin's loans, without any written evidence, is not enough to establish that he actually guaranteed Voisin's loans. If the loans between Voisin and MidSouth are not guaranteed by Koerner, they would not fall under § 37:218 as costs incurred by Koerner on Voisin's behalf and would therefore not be entitled to attorney's priority over other claimants. Therefore, at this point in the proceedings, the Court finds that Koerner has not demonstrated that there is no issue of

8

material fact as to whether he has guaranteed Voisin's loans from MidSouth and recommends that their Motion for Summary Judgment be denied as to priority over the State of Louisiana and Hebert for costs.

### 2. **Priority Over Former Attorney**

Koerner and MidSouth did not address priority over Voisin's former law firm, Duval, in their Motion for Summary Judgment. However, Duval responded to the Motion for Summary Judgment, arguing that its claim for attorney's fees and advances made to Voisin are higher in rank than Koerner and MidSouth's claims. (R. Doc. 78, p. 1.) Duval contends that it entered into a Retainer Contract with Voisin on October 22, 2007, for the same claim that Koerner settled on behalf of Voisin. (R. Doc. 78, p. 1.) Duval argues that pursuant to its contract with Voisin, it represented Voisin and advanced money to and on behalf of Voisin to provide for necessary living expenses. (R. Doc. 78, p. 2.) Duval claims that on November 22, 2007, Voisin terminated their services without cause. (R. Doc. 78, p. 2.)

Duval claims that it ultimately filed suit in state court to collect Voisin's contractual obligation to them for the amount advanced on behalf of Voisin. (R. Doc. 78, p. 2.) Judgment was entered against Voisin and in favor of Duval on April 1, 2008, for $4,965.58 plus costs of court and legal interest from the date of the judgment. (R. Doc. 78, p. 2.) Duval claims that if Koerner's statement of uncontested facts are accurate, its claim is supported by the same law regarding the priority of attorney's fees and costs over other claimants. (R. Doc. 78, pp. 3-4.) Duval therefore claims that it is entitled to all of its legal costs advanced on behalf of Voisin and reasonable attorney's fees because Duval was the first attorney hired by Voisin. (R. Doc. 78, p. 4.)

9

In his supplemental memorandum, Koerner responded to Duval's arguments, stating that he had no notice of Duval's claim until it Answered Tetra's Interpleader Complaint. (R. Doc. 83, p. 2.) Koerner states that he filed this action and obtained a settlement without any knowledge of Duval's involvement. (R. Doc. 83, p. 2.) Koerner further points out that Duval's claim is not itemized and includes claims for funds spent after it was discharged by Voisin. (R. Doc. 83, p. 2.) Koerner states that there is a case on point regarding the priority of attorney's claims to settlement funds, but that the facts in this matter are distinguishable. (R. Doc. 83, p. 3.) In *Billiot v. K-Mart Corp.*, 764 So. 2d 329 (La. App. 1st Cir. 2000), the Court granted the client's first attorney, who was subsequently discharged, priority for his costs over the client's second attorney. However, Koerner claims that the facts in this case are distinguishable from the facts of *Billiot* because, unlike the subsequent attorney in *Billiot,* he filed the suit on behalf of the client and had no reason to be aware of any other attorney's involvement in the case. (R. Doc. 83, pp. 3-4.)

The only case cited by Koerner and MidSouth regarding multiple attorneys claiming priority to the same settlement funds is *Billiot*. In *Billiot*, after a bench trial, the Court issued a judgment awarding the plaintiff $5,000.00 in damages and $8,374.99 for medical expenses. 764 So. 2d at 331. After the judgment was rendered the plaintiff's former attorney intervened, seeking attorney's fees and reimbursements of costs incurred in representing the plaintiff. *Id.* After a hearing on the intervention, the Trial Court awarded the plaintiff's former attorney $1,725.00 in costs and $200.00 in attorney's fees to be paid out of the plaintiff's $5,000.00 in damages, and $3,025.55 for medical expenses paid out of the $8,374.99 awarded to the plaintiff for medical expenses. *Id.*

The plaintiff appealed, claiming that the trial court abused its discretion in holding that the plaintiff's former attorney was entitled to reimbursement of all expenses and costs he incurred in

priority over any expenses, costs, and fees of plaintiff's present attorney. *Id.* The plaintiff argued that "under the theory of unjust enrichment, the attorneys should recover expenses on a proportionate basis or that there should be a prorated division and sharing of losses." *Id.* at 334.

The Louisiana Court of Appeals upheld the Trial Court, noting that plaintiff's former counsel filed suit in the underlying matter, and that the plaintiff's present counsel therefore undertook representation subject to the prior representation of plaintiff's former counsel. *Id.* at 335. The Court of Appeals further stated that the attorneys' fees should be apportioned according to the respective services and contributions of each attorney because the client is only responsible for one contingency fee. *Id.* However, the Court held that the same rationale does not apply to expenses of litigation and advances, which the client obligates himself to repay. *Id.*

Here, Duval claims that it is entitled to costs incurred in representing Voisin, attorney's fee for work performed on Voisin's behalf, and advances made to Voisin. (R. Doc. 78, p. 4.) In support of its contention, Duval claims that it undertook representation of Voisin by gathering medical records, scheduling medical care of Voisin, and analyzing avenues for litigation. (R. Doc. 78-2, ¶ 2.) Duval further asserts that it advanced funds in the amount of $4,965.88 on behalf of Voisin for necessary living expenses, to obtain medical records, and other fees and costs associated with representation of Voisin. (R. Doc. 78-2, ¶ 3.) The Court recommends that Koerner and MidSouth's Motion for Summary Judgment be denied insofar as he requests priority over Duval, because the same factual issues regarding Koerner's claim to priority of loans obtained by Voisin, (*see supra* Part III.A.1), create a genuine issue of material fact. However, the Court finds two additional issues that warrant denial of Koerner and MidSouth's Motion for Summary Judgment as to Duval; namely that Koerner and MidSouth have not established that, as a matter of law (a) they are entitled to

11

priority to the entirety of the settlement funds, to the exclusion of Duval's costs and advances spent on behalf of Voisin, or (b) that Duval is not entitled to any percentage of the settlement funds for their work on Voisin's case.

### a. Costs and Advances

First, Koerner and MidSouth cite no case in which a subsequent attorney was granted priority over a former attorney for litigation costs and advances made to a client. Although Koerner and MidSouth are correct in asserting that the facts of *Billiot* are distinguishable from the facts here, they have not conclusively established that they are entitled to priority over Duval under the facts of this case. First, whether Koerner had notice of Duval's representation is an unresolved material fact that was essential to the Court's decision to give priority to the former attorney in *Billiot*. 764 So. 2d. at 335 (noting that because the plaintiff's initial attorney filed suit in the matter and represented the client for several months, the former attorney was entitled to priority over the present attorney, who undertook his representation subject to the representation of the initial attorney.)

Furthermore, the plaintiff in *Billiot* argued only that the former and present attorneys costs and advances should be apportioned on a *pro rata* basis. *Id.* at 334. Here, Koerner and MidSouth argue that they should recover their advances and fees to the complete exclusion of Duval. Therefore, the Court finds that *Billiot* provides no authority for Koerner and MidSouth to seek the entirety of the settlement funds deposited into the registry, and recommends that their Motion for Summary Judgment be denied as to their request for the $45,700 deposited into the Court's Registry.

### b. Fees

In addition, as the Court stated in *Billiot*, when a client hires successive attorneys on a contingent fee basis, "the fee should be apportioned according to the respective services and

contributions of each attorney." *Id.*; *see also DeVillier v. DeVillier*, 602 So. 2d 1093, 1096 (La. App. 1st Cir. 1992) ("An attorney discharged by his client, unless discharged for cause, is entitled to payment for his services on a quantum meruit basis. Where the client subsequently retains another attorney, the fee should be apportioned according to the respective services and contributions of each attorney, as well as any other relevant factors.") Accordingly, although it appears that Koerner completed the majority of the work on Voisin's case, the Court finds that there is a material factual issue as to whether Duval is entitled to any proportion of the settlement for its work on the matter.

B. **Dismissal of Claims of Interpleader Defendants Who Filed Responsive Pleadings**

Koerner and MidSouth further ask that all claims of Interpleader Defendants who have filed responsive pleadings; specifically, Duval, Hebert, and the State of Louisiana; be dismissed. The Court found that Koerner established that he had priority over Hebert and the State of Louisiana for his fee claim in connection with this matter. (*See supra* Part III.A.1.a.) However, as to Koerner's costs, the factual issue of whether loans obtained by Voisin from MidSouth could be privileged under § 37:218 precluded Summary Judgment. (*See supra* Part III.A.1.b.) In addition to the loan issue noted in Part III.A.1, the Court determined that as to Duval, there was a genuine issue of material fact as to whether Duval was entitled to recover any fees, cost, or advances incurred pursuant to its representation of Voisin. (*See supra* Part III.A.2.) Because Koerner and MidSouth have not established that Duval, Hebert, and the State of Louisiana have no valid claim to the $45,700 deposited in the Court's registry, the Court recommends that Koerner and MidSouth's Motion for Summary Judgment be denied as to their request that all claims of Interpleader Defendants be dismissed.

C. **Dismissal of Merits of Claims of Defaulted Interpleader Defendants**

Koerner and MidSouth further seek dismissal, on the merits, of the claims of the parties against whom the Clerk's entry of default has been entered. (R. Doc. 77, p. 1.) Specifically, Koerner and MidSouth seek to dismiss, on the merits, the claims of the following Interpleader Defendants, against whom the Clerk entered a default judgment: Lloyd J. Voisin, Jr.; First National Bank of Commerce; Chateau Creole Apartments; 32nd Judicial District Court, State of Louisiana, Tim Fanguy Bail Bond, Inc.; Ricky Anthony Lebouef, Sr.; Howard Lucas Marcello; Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Terrebonne General Medical Center; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy. (*See* R. Doc. 61, p. 1.) Koerner and MidSouth offered no basis for this portion of their motion. However, Duval did not oppose the dismissal of the claims of the defaulted Interpleader Defendants on the merits.

The "'failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted.'" *Gulf Coast Galvanizing, Inc. v. Steel Sales, Co.*, 826 F. Supp. 197, 203 (S.D. Miss. 1993) (quoting *Gen. Accident Group v. Gagliardi*, 593 F. Supp. 1080, 1089 (D. Conn. 1984)). An interpleader defendant who fails to answer or otherwise respond to an Interpleader Complaint, "has forfeited any claim to proceeds from the interpleaded funds." *Shuqualak Lumber Co. v. Hardin*, No. 1:08CV297-P-S, 2009 WL 2767676, at *2 (N.D. Miss. Aug. 27, 2009). The Court in *Shuqualak Lumber Co.*, went on to adopt the Magistrate's Report and Recommendation granting a default judgment against a defendant in interpleader who failed to respond to the Interpleader Complaint and dismissing any potential claim that the defendant might have to the interpleaded funds. *Id.* at *2.

Furthermore, "[t]he party seeking entry of default must show that the party against whom default is sought has been properly served." *Life Ins. Co. of N. Am. v. Jenkins-Dyer*, No. 08-CV-

14

2129 KHV, 2009 WL 297481, at *4 (D. Kan. Feb. 6, 2009). Federal Rule of Civil Procedure ("Rule") 4(l) requires a "server's affidavit" for a valid return unless the service was effected by a U.S. Marshal or Deputy Marshal. To constitute a valid server's affidavit under Rule 4(1), the affidavit must be completed and signed. *See Florance v. Bush*, 2010 WL 2730615, at *2 (N.D. Tex. May 25, 2010) (holding that because no filed return of service had been completed or signed, the filed returns were invalid).

Here, the Court finds that a judgment of default is warranted against Lloyd J. Voisin, Jr.; First National Bank of Commerce; Chateau Creole Apartments; Tim Fanguy Bail Bond, Inc.; Ricky Anthony Lebouef, Sr.; Howard Lucas Marcello; Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy and therefore recommends that their potential claims to the $45,700 in the Court's Registry be dismissed with prejudice. Based on the documents provided to the Court (*see* Summons Returned Executed, R. Docs. 52 & 54-57), these parties were properly served, but have failed to respond to Tetra's Interpleader Complaint. Accordingly, a default judgment is warranted and it is the recommendation of the Court that the Clerk's Entry of Default (R. Doc. 61) be granted in part insofar as a default judgment be entered against the Interpleader Defendants named above and that their potential claims be dismissed.

However, after reviewing the record, the Court finds that the return of service for Interpleader Defendant, Terrebonne General Medical Center ("TGMC"), was not properly executed. The Return of Service for TGMC's summons is not signed by the server. (R. Doc. 52, p. 16.) Furthermore, there is no indication that the server, Anne Parr, is a U.S. Marshal or Deputy Marshal. Accordingly, the Court finds that the return is invalid and that because service was invalid, the Court finds that entry of default against TGMC was improper. Therefore, it is recommended that

Koerner and MidSouth's Motion for Summary Judgment be denied as to the dismissal of the claims of TGMC on the merits, and the Clerk's Entry of Default (R. Doc. 61) be denied insofar as it dismisses TGMC's claims.

IV. Recommendation

It is therefore **RECOMMENDED** that Koerner and MidSouth's **Motion Summary Judgment (R. Doc. 77)** be **GRANTED IN PART** and **DENIED IN PART**.

- **IT IS RECOMMENDED** that the Motion be **GRANTED** insofar as Koerner has established priority for his contingency fee ($20,000) over Hebert and the State of Louisiana to the funds in the Court's Registry and insofar as a judgment of default should be entered against the following Interpleader Defendants: Lloyd Joseph Voisin, Jr.; First National Bank of Commerce; Chateau Creole Apartments; Tim Fanguy Bail Bond, Inc.; Ricky Anthony Lebouef, Sr.; Howard Lucas Marcello; Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy.

- **IT IS FURTHER RECOMMENDED** that the Motion be **DENIED** as to priority over the State of Louisiana and Hebert for costs because Koerner has not demonstrated that there is no issue of material fact as to whether he has guaranteed Voisin's loans from MidSouth.

- **IT IS FURTHER RECOMMENDED** that the Motion be **DENIED** because the same factual issues regarding Koerner's claim to priority of loans obtained by Voisin, (*see supra* Part III.A.1), create a genuine issue of material fact.

- **IT IS FURTHER RECOMMENDED** that the Motion be **DENIED as to Duval** because Koerner and MidSouth have not established that, as a matter of law (a) they are entitled to priority to the entirety of the settlement funds, to the exclusion of Duval's costs and advances spent on behalf of Voisin, or (b) that Duval is not entitled to any percentage of the settlement funds for their work on Voisin's case.

- **IT IS FURTHER RECOMMENDED** that the Motion be **DENIED** as to their request that all claims of Interpleader Defendants be dismissed because Koerner and MidSouth have not established that Duval, Hebert, and the State of Louisiana have no valid claim to the $45,700 deposited in the Court's registry.

- **IT IS FURTHER RECOMMENDED** that the Motion be **DENIED** as to the dismissal of the claims of Terrebonne General Medical Center ("TGMC") on the merits because service was invalid and therefore, the Clerk's Entry of Default should be partially denied, insofar as it seeks to dismiss TGMC's claims.

- **IT IS FURTHER RECOMMENDED** that a judgment of default is warranted against Lloyd J. Voisin, Jr.; First National Bank of Commerce; Chateau Creole Apartments; Tim Fanguy Bail Bond, Inc.; Ricky Anthony Lebouef, Sr.; Howard Lucas Marcello; Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy and therefore recommends that their potential claims to the $45,700 in the Court's Registry be dismissed with prejudice in partial accordance with the Clerk's Entry of Default (R. Doc. 61.)

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 31st day of August, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

**CLERK TO NOTIFY:**
**District Judge Helen Berrigan**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.