UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLYOD VOISIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1302** |
| **TETRA TECHNOLOGIES, INC.** | **SECTION "C"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court is a **Renewed Motion for Summary Judgment and For the Entry of Final Judgments for the Amount Awarded and the Amount to be Awarded (R. Doc. 94)** filed by the Defendants in Interpleader, Louis R. Koerner, Jr. ("Koerner") and MidSouth Bank, N.A. ("MidSouth"), which was referred to the undersigned United States Magistrate Judge for determination pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (c).** Upon review of the motion, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.     Factual Background**

    **A.     Previous Motion for Summary Judgment**

On August 31, 2010, this Court issued a Report and Recommendation on Koerner and MidSouth's previously filed Motion for Summary Judgment. (*See* R. Doc. 84.) The Report and Recommendation was adopted by the presiding Judge. (*See* R. Doc. 93.) Therein, this Court set forth the relevant factual background to the above captioned matter. Therefore, they will not be separately detailed in this Report and Recommendation.

The Motion for Summary Judgment which was the subject of this Court's August 31, 2010, Report and Recommendation related to Koerner and MidSouth's contention that they are entitled to $45,700 of settlement proceeds which were placed in the Registry of the Court by the Defendant, Tetra

Technologies, Inc. ("Tetra"). Koerner and MidSouth further sought the dismissal of the claims of Interpleader Defendants who filed responsive pleadings, and dismissing the merits of the claims of Interpleader Defendants against whom a clerk's entry of default had been entered.

In the Motion for Summary Judgment, Koerner claimed that he represented the Plaintiff, Lloyd Voisin ("Voisin") in the pursuit of his claims against Tetra and secured the settlement funds deposited into the registry. (R. Doc. 77, p. 2.) MidSouth claimed that it advanced funds utilized to support Voisin's case and to pay the expenses of Voisin. (R. Doc. 77, p. 2.) Koerner claimed that on November 20, 2007, he entered into an employment contract with Voisin in which he would receive 40% of all money recovered by Voisin arising out of this case. (R. Doc. 77, p. 2.) The contract also provided that any costs, advances, and expenses incurred by Koerner in pursuit of Voisin's claim in addition to the 40% would be taken from Voisin's portion of the settlement. (R. Doc. 77-3.)

Koerner later secured loans on behalf of Voisin with MidSouth to provide necessary funding for the prosecution of his case. (R. Doc. 77, pp. 2-3.) Koerner contended that the total fees and costs associated with the pursuit and settlement of Voisin's claim were $28,198.01. (*See* R. Doc. 77-2, p. 4.) Koerner argued that his attorney's fees in this matter were $20,000 (40% of the $50,000 settlement), and that therefore, the total fees and costs due to him in this matter is $48,198.01. (R. Doc. 77-2, p. 5.) Out of the $50,000 settlement $4,300 was already paid by agreement to two other attorneys who advanced funds to Voisin under the mistaken belief that he was not represented by counsel. (R. Doc. 77-2, p. 5.) Therefore, Koerner contended that he was entitled to the entire $45,700 in the Court's registry because he had acquired fees and costs in this matter in excess of that amount. (R. Doc. 77-2, p. 5.)

Koerner and MidSouth argued that he was entitled to all of the proceeds, to the exclusion of Patty Neff Hebert ("Hebert") and the State of Louisiana through the Department of Social Services,

Child Support Enforcement, the 32nd Judicial District Court IV-D Program, and the State of Louisiana, LASES # 11590801 (collectively, "the State"). Both Hebert and the State sought child support payments. Koerner and MidSouth further asserted that Koerner had priority over the funds in the registry over Voisin's former attorney's law firm, Duval, Funderburk, Sundbery, Lovell & Watkins ("Duval").

The motion was granted in part and denied in part. Specifically, the Court granted the motion insofar as it found that Koerner had established priority for his contingency fee of $20,000 over Hebert and the State of Louisiana to the funds in the Court's Registry. The Court further found that a judgment of default should be entered against various Interpleader Defendants.[1]

The Court denied the motion as to the priority over the State of Louisiana and Hebert for costs and Koerner's claim to priority of loans obtained by Voisin because the Court found that Koerner had not demonstrated that there was no issue of material fact as to whether he had guaranteed Voisin's loans from MidSouth. The Court further denied the motion insofar as Koerner and MidSouth claimed priority over Duval because Koerner and MidSouth had not established that as a matter of law (a) they were entitled to priority to the entirety of the settlement funds, to the exclusion of Duval's costs and advances spent on behalf of Voisin, or (b) that Duval was not entitled to any percentage of the settlement funds for their work on Voisin's case. The motion was further denied as to Koerner and MidSouth's request that all claims of Interpleader Defendants be dismissed because Koerner and MidSouth had not established that Duval, Hebert, and the State of Louisiana had no valid claim to the

---

[1] Specifically, the Court found that a judgment of default should be entered against the following Interpleader Defendants: Lloyd Joseph Voisin, Jr.; First National Bank of Commerce; Chateau Creole Apartments; Tim Fanguy Bail Bond, Inc.; Ricky Anthony Lebouef, Sr.; Howard Lucas Marcello; Dr. Michael L. Watkins; Dr. Chris Cenac, Jr.; Dr. Charles J. Ledoux; Dr. Christopher Wright; Open MRI of Louisiana; and HealthPro Physical Therapy. These Interpleader Defendant's potential claims to the $45,700 in the Court's Registry were dismissed with prejudice in partial accordance with the Clerk's Entry of Default.

$45,700 deposited in the Court's registry. The Court also denied the motion as to the dismissal of the claims of Terrebonne General Medical Center ("TGMC") on the merits because service was invalid.

### B.   Current Motion for Summary Judgment

On December 30, 2010, Koerner and MidSouth filed the instant Motion for Summary Judgment. Koerner and MidSouth concede that Duval is entitled to the $4,965.88 he claims that he advanced. Therefore, Koerner and MidSouth seek a judgment indicating that they are entitled to the remaining $20,734.12 of the settlement proceeds currently deposited in the Court's Registry which were not allocated by this Court's previous ruling.[2]

The Movants contend that there is no remaining issue of material fact as to whether Koerner guaranteed Voisin's loans from MidSouth because proper documentation has been attached to the instant motion which demonstrate that Koerner guaranteed the loans. The Movants therefore contend that the claims of the State and Hebert should be dismissed because Koerner and Duval have a first lien and privilege over the proceeds and there are no funds available to satisfy any other claimants claims. The Movants further seeks a dismissal of TGMC's claims because it has no interest in the settlement funds. Finally, the Movants seek a rule 58 final judgment pursuant to Rule 54(b) for the previous award of $20,000 in attorneys fees and for the $20,734.12 requested in the subject motion.

### II.   Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[2]There is currently $45,700.00 deposited in the Court's Registry. In this Court's previous Report and Recommendation, which was adopted by the presiding Judge, the Court allocated $20,000.00 of the amount deposited for Koerner's fees. Koerner and MidSouth concede that Duval is entitled to $4,965.88 of the $25,700.00 which was not allocated in the previous Report and Recommendation. Therefore, Koerner and MidSouth seek only the remaining $20,734.12.

law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**III.    Analysis**

    **A.    Costs and Advances**

Koerner contends that the attorney employment contract he entered into with his client Voisin provided him with the ability to recoup all costs, advances, and expenses and further established a lien and privilege over the proceeds of the case. He further contends that because he guaranteed repayment of Voisin's loan with MidSouth which was given to him to provide the necessary funding for the prosecution of the litigation against Tetras as well as for living expenses and other necessary costs, he and Midsouth should be repaid in first priority over all other creditors.

The Court found originally that there was a question of material fact as to whether the costs and advances were appropriately established as an advancement of funds to Voisin such that it denied the request. However, since that time, Koerner and MidSouth have properly submitted the matter for consideration.

It should be noted that courts have acknowledged that an attorney's guarantee of a litigation expense is equivalent to an attorney's advance of funds to his client because "[i]n both instances, the attorney is standing in the shoes of his client and therefore, is entitled to assert the attorney privilege created by LSA-R.S. 9:5001." *Ragas*, 690 So. 2d at 1115.

Koerner has submitted an affidavit indicating that he has made disbursements on behalf of Voisin totaling $19,525.54. Additionally, Koerner submitted the unsworn declaration in which Benjamin Hymel ("Hymel"), the President of Houma City MidSouth Bank in which the bank loaned $21,645.00 to the plaintiff which was guaranteed by Koerner. (R. Doc. 94-5, p. 1.) Hymel indicated that the amount of the loan total was the result of three previous consolidated loans.[3] The record

---

[3] The three loans which were consolidated that resulted in the total of $21,645.00 were: Loan #23753, $7,530.00, November 20, 2007; Loan #23848, $8,030.00, December 18, 2007; and Loan # 23954, $6,030.00, February 13, 2008.

reflects that Koerner guaranteed the repayment on November 15, 2007, of all of the funds plus the interest of $2,590.27 as of December 27, 2010. *Id.* Koerner, according to Hymel's affidavit, also paid interest in the amount of $4, 956.02 on February 26, 2010. *Id.* at p. 2. Therefore, the Court finds that Koerner and MidSouth have demonstrated that there is no issue of material fact as to whether he has guaranteed Voisin's loans from MidSouth and recommends that the Motion for Summary Judgment be **GRANTED** giving Koerner priority over the State of Louisiana and Hebert for costs.

### B.  Dismissal of Hebert and the State's Claims

Koerner and MidSouth further ask that all claims of Interpleader Defendants who have filed responsive pleadings; specifically, Hebert, and the State of Louisiana; be dismissed. This Court finds that Koerner established that he had priority over Hebert and the State of Louisiana for his cost claim in connection with this matter.[4] (*See supra* Part III.A.) Koerner's claims exceed that which has been deposited in the court's Registry. Thus, Koerner and MidSouth have now established that Hebert, and the State of Louisiana have no valid claim to the $45,700 deposited in the Court's registry. As a result, the Court recommends that Koerner and MidSouth's Motion for Summary Judgment be **GRANTED** as to their request that Hebert and the State's claims be dismissed.

### C.  Dismissal of TGMC's Claims

Koerner and MidSouth further seek to dismiss, on the merits, the claims of TGMC.

The "'failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted.'" *Gulf Coast Galvanizing, Inc. v. Steel Sales, Co.*, 826 F. Supp. 197, 203 (S.D. Miss. 1993) (quoting *Gen. Accident Group v. Gagliardi*, 593 F. Supp. 1080, 1089 (D. Conn. 1984)). An interpleader

---

[4]In the Court's previous Report and Recommendation, adopted by the presiding Judge, it also found that Koerner had established that he had priority over Hebert and the State of Louisiana for his fees. (*See* R. doc. 84, *adopted by* R. Doc. 93.)

defendant who fails to answer or otherwise respond to an Interpleader Complaint, "has forfeited any claim to proceeds from the interpleaded funds." *Shuqualak Lumber Co. v. Hardin*, No. 1:08CV297-P-S, 2009 WL 2767676, at *2 (N.D. Miss. Aug. 27, 2009). The Court in *Shuqualak Lumber Co.*, went on to adopt the Magistrate Judge's Report and Recommendation granting a default judgment against a defendant in interpleader who failed to respond to the Interpleader Complaint and dismissing any potential claim that the defendant might have to the interpleaded funds. *Id.* at *2.

Here, the Court finds that a judgment of default is warranted against TGMC. In an unsworn declaration, Celest Boudreaux, the personal finance and service manager for TGMC, acknowledged that notice of the interpleader was received. However, TGMC chose not to make an appearance or file a Complaint because it has no interest in the settlement proceeds. Boudreaux attests that payment in full has been received through Voisin's Workers Compensation and there is no present balance owed on the account. Accordingly, a default judgment against TGMC is warranted and their potential claims should be dismissed with prejudice.

### IV.  Recommendation

It is therefore **RECOMMENDED** that Koerner and MidSouth's **Renewed Motion for Summary Judgment and for the Entry of Final Judgments for the Amount Awarded and the Amount to be Awarded (R. Doc. 94)** be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Koerner and MidSouth be awarded **$40,734.12** from the settlement proceeds deposited in the Court's Registry.

**IT IS FURTHER RECOMMENDED** that Duval, Funderburk, Sudbery, Lovell & Watkins be awarded **$4,965.88** from the settlement proceeds deposited in the Court's Registry.

**IT IS FURTHER RECOMMENDED** that Terrebonne General Medical Center's claims be **DISMISSED WITH PREJUDICE** and a **DEFAULT JUDGMENT** be entered against this party as

TGMC has conceded that it does not have any interest in the funds which are in the Registry of the Court.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 1st day of June, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

**CLERK TO NOTIFY:**
**District Judge Helen G. Berrigan**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.